# EXHIBIT A – Part I





A $5 Convenience fee will be added to the transaction at checkout.

**Civil Docket Report**

## Case Description

| | |
|---|---|
| **Case ID:** | 151103959 |
| **Case Caption:** | ERIE INSURANCE EXCHANGE VS GREENWICH INSURANCE COM |
| **Filing Date:** | Monday , November 30th, 2015 |
| **Court:** | COMMERCE - EXPEDITED, NON JURY |
| **Location:** | City Hall |
| **Jury:** | NON JURY |
| **Case Type:** | INSURANCE, DECLARATORY JUDGMNT |
| **Status:** | WAITING TO LIST CASE MGMT CONF |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case motions

*No case motions were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | MOLOTSKY, ALLAN C |
| **Address:** FOWLER HIRTZEL MCNULTY & SPAUL 2000 MARKET STREET SUITE 550 PHILADELPHIA PA 19103 (215)789-4848 | | **Aliases:** | *none* | |
| | | | | |

| 2 | 1 | | PLAINTIFF | ERIE INSURANCE EXCHANGE |
|---|---|---|---|---|
| **Address:** | 100 ERIE INSURANCE PLACE ERIE PA 16530 | **Aliases:** | *none* | |
| | | | | |
| 3 | | | DEFENDANT | GREENWICH INSURANCE COMPANY |
| **Address:** | 70 SEAVIEW AVENUE STAMFORD CT 06902 | **Aliases:** | *none* | |
| | | | | |
| 4 | | | TEAM LEADER | DJERASSI, RAMY I |
| **Address:** | CITY HALL, ROOM 540 PHILADELPHIA PA 19107 (215)686-7338 | **Aliases:** | *none* | |
| | | | | |
| 5 | 1 | | ATTORNEY FOR PLAINTIFF | CHOW, DENNIS |
| **Address:** | FOWLER HIRTZEL MCNULTY & SPAUL 2000 MARKET STREET SUITE 550 PHILADELPHIA PA 19103 (215)789-4848 | **Aliases:** | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount | Approval/ Entry Date |
|---|---|---|---|---|
| 30-NOV-2015 04:58 PM | ACTIVE CASE | | | 01-DEC-2015 09:18 AM |
| **Docket Entry:** | E-Filing Number: 1511061733 | | | |
| | | | | |

| 30-NOV-2015 04:58 PM | COMMENCEMENT OF CIVIL ACTION | MOLOTSKY, ALLAN C | | 01-DEC-2015 09:18 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>Final Cover | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | none. | | | |

| 30-NOV-2015 04:58 PM | COMPLAINT FILED NOTICE GIVEN | MOLOTSKY, ALLAN C | | 01-DEC-2015 09:18 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>Chesmont - Complaint.pdf<br>Chesmont - Complaint Exhibit A (Greenwich Policy).pdf<br>Chesmont - Complaint Exhibit B (Erie Auto Policy).PDF<br>Chesmont - Complaint Exhibit C (Erie BCL Policy).PDF<br>Chesmont - Complaint Exhibit D (Andre Complaint).pdf<br>Commerce Addendum | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. | | | |

| 30-NOV-2015 04:58 PM | SHERIFF'S SURCHARGE 1 DEFT | MOLOTSKY, ALLAN C | | 01-DEC-2015 09:18 AM |
|---|---|---|---|---|
| **Docket Entry:** | none. | | | |

| 30-NOV-2015 04:58 PM | WAITING TO LIST CASE MGMT CONF | MOLOTSKY, ALLAN C | | 01-DEC-2015 09:18 AM |
|---|---|---|---|---|
| **Docket Entry:** | none. | | | |

| 15-DEC-2015 01:13 PM | AFFIDAVIT OF SERVICE FILED | CHOW, DENNIS | | 15-DEC-2015 01:29 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>greenwich affidavit of service.pdf | | Click HERE to purchase all documents related to this one docket entry | |

| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON GREENWICH INSURANCE COMPANY BY CERTIFIED MAIL ON 12/07/2015 FILED. (FILED ON BEHALF OF ERIE INSURANCE EXCHANGE) |
|---|---|

▶ Case Description    ▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

[ Search Home ]

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

NOVEMBER 2015

E-Filing Number 1511061733

**003959**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| ERIE INSURANCE EXCHANGE | GREENWICH INSURANCE COMPANY |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| 100 ERIE INSURANCE PLACE ERIE PA 16530 | 70 SEAVIEW AVENUE STAMFORD CT 06902 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 1 | [X] Complaint    ☐ Petition Action    ☐ Notice of Appeal | | |
| | | ☐ Writ of Summons    ☐ Transfer From Other Jurisdictions | | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | [X] Commerce | ☐ Settlement |
| [X] More than $50,000.00 | ☐ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | | |

CASE TYPE AND CODE

1D - INSURANCE, DECLARATORY JUDGMNT

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED PRO PROTHY NOV 30 2015 K. EDWARDS | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| | | YES        NO |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ERIE INSURANCE EXCHANGE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ALLAN C. MOLOTSKY | FOWLER HIRTZEL MCNULTY & SPAUL 2000 MARKET STREET SUITE 550 PHILADELPHIA PA 19103 |
| PHONE NUMBER          FAX NUMBER | |
| (215)789-4848         none entered | |
| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
| 28923 | amolotsky@fhmslaw.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
| ALLAN MOLOTSKY | Monday, November 30, 2015, 04:58 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMMERCE PROGRAM ADDENDUM
## TO CIVIL COVER SHEET

This case is subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

1. Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

2. Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:

   a. Uniform Commercial Code transactions;

   b. Purchases or sales of business or the assets of businesses;

   c. Sales of goods or services by or to business enterprises;

   d. Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;

   e. Surety bonds;

   f. Purchases or sales or leases of, or security interests in, commercial, real or personal property; and

   g. Franchisor/franchisee relationships.

3. Actions relating to trade secret or non-compete agreements;

4. "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

5. Actions relating to intellectual property disputes;

6. Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

7. Derivative actions and class actions based on claims otherwise falling within these ten types, such as shareholder class actions, but not including consumer class actions, personal injury class actions, and products liability class actions;

8. Actions relating to corporate trust affairs;

**X** 9. Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

10. Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

| | |
|---|---|
| ERIE INSURANCE EXCHANGE<br>100 Erie Insurance Place<br>Erie, PA 16530,<br><br>                    Plaintiff,<br><br>          vs.<br><br>GREENWICH INSURANCE COMPANY,<br>70 Seaview Avenue<br>Stamford, CT 06902,<br><br>                    Defendant. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>COMMERCE PROGRAM<br><br>_____ TERM, 2015<br><br>No. ____ |

Filed and Attested by
PROTHONOTARY
30 NOV 2015 04:58 pm
K. EDWARDS

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita a o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTAT DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SINO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE IENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

[WI1282036.1]

Case ID: 151103959

**FOWLER HIRTZEL MCNULTY &
SPAULDING, LLP**
BY:  ALLAN C. MOLOTSKY, ESQUIRE
E-MAIL: amolotsky@fhmslaw.com
I.D. # 28923
DENNIS CHOW, ESQUIRE
E-MAIL: dchow@fhmslaw.com
I.D. # 311166
2000 MARKET STREET, SUITE 550
PHILADELPHIA, PA  19103
215-789-4848

ATTORNEYS FOR PLAINTIFF
ERIE INSURANCE EXCHANGE

| | |
|---|---|
| ERIE INSURANCE EXCHANGE<br>100 Erie Insurance Place<br>Erie, PA 16530,<br><br>       Plaintiff,<br><br>   vs.<br><br>GREENWICH INSURANCE COMPANY,<br>70 Seaview Avenue<br>Stamford, CT 06902,<br><br>       Defendant. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>COMMERCE PROGRAM<br><br>_____ TERM, 2015<br><br>No. ____ |

## COMPLAINT

Plaintiff, Erie Insurance Exchange ("Erie"), by and through its counsel, Fowler Hirtzel McNulty & Spaulding, LLP, alleges against Defendant, Greenwich Insurance Company ("Greenwich"), as follows:

### THE PARTIES

1.  Erie is a reciprocal insurance exchange organized under the Insurance Company Law of the Commonwealth of Pennsylvania.

2.  Upon information and belief, Greenwich is a foreign insurance company authorized to write property and casualty insurance in the Commonwealth of Pennsylvania with a principal place of business located at 70 Seaview Avenue, Stamford, Connecticut.

{W0282036.1}

Case ID: 151103959

3.      Upon information and belief, Greenwich conducts regular and substantial business activities within Philadelphia County.

4.      This action is one for declaratory judgment where the dispute arises from a business or commercial insurance policy and is properly assigned to the Commerce Program of this Court.

### THE GREENWICH POLICY

5.      Greenwich issued its Commercial Excess Follow Form and Umbrella Liability Policy to Ches-Mont Disposal Company LLC ("Ches-Mont"), policy number UEC001995402, for the policy period from January 23, 2008 to January 23, 2009. (the "Greenwich Policy"). The Greenwich Policy is attached and incorporated by reference as Exhibit "A."

6.      The Greenwich Policy has an insuring agreement for Coverage B – Umbrella Occurrence Based Liability Coverage Over Self-Insured Retention that provides, in relevant part, as follows:

> A.      The **Company** will pay on behalf of the **Insured** those sums in excess of the **Self-Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the Insured under an **Insured Contract** because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** not covered by **Scheduled Underlying Insurance**, provided that:
>
>> 1.      the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** happening anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**.
>
> •••
>
> However, the **Company** will have no duty to defend the **Insured** against any **Suit** seeking damages to which this insurance does not apply.
>
> •••

[W0282036.1]

2

Ex. "A" (Form GIC-CUP1CP at 2).

7.  The Greenwich Policy includes the following defense provisions:

> A.  The **Company** shall have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered by this policy:
>
> > ...
>
> > 2.  under Coverage B, when the damages sought because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** would not be covered by **Scheduled Underlying Insurance**.
>
> The **Company** shall have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered by this policy, even if the **Suit** is groundless, false or fraudulent.
>
> > ...

Id. (Form GIC-CUP1CP at 2).

8.  The Greenwich Policy contains various exclusions, including, in relevant part, the following:

> **B.  Various Laws**
>
> Under Coverages A and B, this insurance does not apply to any liability under any of the following:
>
> > ...
>
> > 2.  any Workers' Compensation, Unemployment Compensation, or Disability Benefits Law, or any similar law.
>
> > ...

Id. (Form GIC-CUP1CP at 4).

9.  The Greenwich Policy utilizes various definitions, including, in relevant part, the following:

> **Bodily Injury** under Coverage B and under any exclusion in this policy applicable to Coverage A means **Bodily Injury**, sickness, disability or disease, including death resulting from any of these at

{W0282016.1}

3

Case ID: 151103959

any time. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from Bodily Injury, sickness, disability or disease.

...

**Insured** under Coverage B means:

    1.    the **Named Insured**;

    2.    if you are an individual, your spouse, but only with respect to the conduct a business of which you are a sole owner;

    3.    your partners, joint venture members, executive officers, employees, directors, stockholders or volunteers while acting within the scope of their duties as such;

    4.    any person or organization while acting as your real estate manager;

    5.    your legal representative if you die, but only with respect to duties as such; and

    6.    any person or organization to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of operations conducted by you or on your behalf.

Notwithstanding any of the above, no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership or joint venture that is not designated in Item 1 of the Declarations as a **Named Insured**.

...

**Named Insured** under Coverage B means:

    1.    any person or organization designated in Item 1 of the Declarations;

    2.    any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy and to which more specific insurance does not apply; and

{W0282036.1}

4

3. any organization, except for a partnership or a joint venture, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

(a) this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury** or **Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization; and

(b) you give us prompt notice after you acquire or form such organization.

A partnership or joint venture that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

...

**Occurrence** under Coverage B means:

1. as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions shall be deemed to arise out of one **Occurrence**.

**Other Insurance** under Coverages A and B means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention**, or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

...

Case ID: 151103959

**Scheduled Underlying Insurance** under Coverages A and B means:

> 1.      the policy or policies of insurance listed in the **Schedule of Underlying Insurance** forming a part of this policy; and

> 2.      automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

**Self-Insured Retention** under Coverage B means the amount applicable to each **Occurrence** for which the **Insured** is responsible that is shown in Item 4 of the Declarations.

<div align="center">•••</div>

Id. (Form GIC-CUP1CP at 16-21).

10.      The Greenwich Policy includes a condition for "other insurance" that provides as follows:

**L.      Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

Id. (Form GIC-CUP1CP at 14).

11.      Item 1 of the Declarations lists "Chesmont Disposal Company, LLC" as the named insured. Id. (GIC-CUP1D at 1).

12.      The Declarations of the Greenwich Policy lists a self-insured retention of $10,000. Id. (GIC-CUP1D at 1).

Case ID: 151103959

13.    The Schedule of Underlying Insurance that is part of the Greenwich Policy

identifies, among other policies of insurance, an occurrence-based commercial general liability

policy issued by Greenwich Insurance Company, policy number GEC001995502, and an

automobile liability policy issued by XL Insurance America, Inc., policy number

AEC001995302, each for the policy period from January 23, 2008 to January 23, 2009. Id.

(Form GIC-CUP1S at 1).

14.    No policy of insurance issued by Erie is listed on the Schedule of Underlying

Insurance on the Greenwich Policy.

### THE ERIE POLICIES

15.    Erie issued its Pioneer Commercial Auto Policy to Koons d/b/a Miller Concrete,

policy number Q01-0930220, for the policy period from January 9, 2008 to January 9, 2009,

with a limit of liability of $1 million per accident. (the "Erie Auto Policy"). The Erie Auto Policy

is attached and incorporated by reference as Exhibit "B."

16.    The Erie Auto Policy affords liability protection, as written on form CAP (04/96)

and modified by endorsement ACPA01 (05/04), with the following insuring agreement:

**OUR PROMISE**

**Bodily Injury Liability**

**Property Damage Liability**

We may investigate or settle any claim or suit for damages against
anyone we protect, at our expense. If anyone we protect is sued for
damages covered by this policy, we will defend with a lawyer we
choose, even if the allegations are not true. Our obligation to pay
any claim or judgment or defend any suit ends when we have used
up our limit of protection by paying judgments or settlements.

**We** will pay all sums **anyone we protect** legally must pay for
damages, including vicarious liability for punitive or exemplary
damages to the extent allowed by law, caused by an **accident**
covered by this policy, subject to the Limits of Protection. The

Case ID: 151103959

**accident** must arise out of the ownership, maintenance, use, loading or unloading of an **auto we insure**.

Damages must involve:

> 1. bodily injury, meaning physical harm, sickness or disease, or resultant death to a person; or
>
> 2. property damage, meaning damage to or loss of use of tangible property.

Ex. "A" (Form CAP at 6; Form ACPA01 at 2).

17. The Autos We Insure section of the Erie Auto Policy provides, in relevant part, as follows:

**AUTOS WE INSURE**

The **Declarations** shows which of the following are **autos we insure** under this policy:

1. **Owned Autos.**

   a. These are **autos** described on the **Declarations**, but only for coverages for which a premium charge is shown.

   b. For liability coverages, **owned autos** also include:

   > 1) a non-owned trailer while attached to an **owned auto**; and
   >
   > 2) any **auto** not owned by, furnished or available for the regular use* of, and while driven by:
   >
   > > a) **you**;
   > >
   > > b) **your** active partner and spouse residing in the same household;
   > >
   > > c) **your** active executive officer and spouse residing in the same household; or

Case ID: 151103959

> d)   if **you** are a joint
> venture, **your** active member
> and spouse residing in the
> same household.
>
> ...
>
> \***Autos** hired, rented or borrowed for
> more than 45 consecutive days shall
> be considered furnished or available
> for regular use.

Id. (Form CAP at 5; Form ACPA01 at 1).

18.    The Erie Auto Policy has a condition for "other insurance" that provides, in

relevant part, as follows:

> **OTHER INSURANCE**
>
> This policy provides primary insurance for any **owned auto**. It is
> excess over any other collectible insurance on an **auto we insure**
> that **you** do not own up to the limit of protection for one **auto**.
>
> ...
>
> When there is other insurance applicable to the loss on the same
> basis, **we** will pay our share. **Our** share of the loss is the proportion
> that the liability of protection bears to the total of all applicable
> limits. **We** will never pay more than the limit of protection.
>
> ...

Id. (Form CAP at 9).

19.    Erie also issued its Business Catastrophe Liability Policy to Koons d/b/a Miller

Concrete, policy number Q25-0970047, for the policy period from January 9, 2008 to January 9,

2009, with a limit of liability of $1 million per occurrence. (the "Erie BCL Policy"). The Erie

BCL Policy is attached and incorporated by reference as Exhibit "C."

20.    The Erie BCL Policy has an insuring agreement for Coverage A – Bodily Injury

and Property Damage Liability, written on form CU 00 01 (12/01), that provides, in relevant

part, as follows:

{W0282036.1}                                    9

1.    **Insuring Agreement**

a.    We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other 'suit' seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply....

···

Ex. "C" (Form CU 00 01 at 1).

21.    The Erie Auto Policy is "underlying insurance" under the Erie BCL Policy.

22.    The Erie BCL Policy has a condition for "other insurance" that provides as

follows:

5.    **Other Insurance**

a.    This insurance is excess over, and shall not contribute [sic] any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have not [sic] duty under Coverage **A** or **B** to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'. If not [sic] other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

b.    When this insurance is excess over other insurance, we will pay only our share of the 'ultimate net loss' that exceeds of the sum of:

1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

2)    The total of all deductible and self-insured amounts under all that other insurance.

Case ID: 151103959

Id. (Form CU 00 01 at 9).

## THE ANDRE ACTION

23.     On February 25, 2010, Samantha L. Andre, individually and as Administratrix of the Estate of Jeremy J. Andre and on behalf of Logan Andre, a minor, initiated a civil action in the Court of Common Pleas of Philadelphia County, February Term, 2010, No. 3525, against Stephen P. Koons ("Koons"), among others (the "Andre action"). The operative complaint in the Andre action is attached and incorporated by reference as Exhibit "D" (the "Andre complaint").

24.     The Andre action was transferred to the Court of Common Pleas of Montgomery County and docketed under 2011-06272.

25.     The Andre complaint alleged that "Koons did business in Pennsylvania under the fictitious name of Miller Concrete." Ex. "D" ¶ 15.

26.     According to the Andre complaint, the "vehicle involved in the death of Jeremy Andre was a 2001 Mack Truck, Model No.: MR688S, with the VIN 1M2K195C71MO18188[.]" (the "truck"). Id. ¶ 18.

27.     According to the Andre complaint, "Koons, d/b/a Miller Concrete, located at 200 Lincoln Avenue, Suite 111, Phoenixville, PA 19460, purchased the truck from a McNeilus Truck and Manufacturing dealer located in Morgantown, Pennsylvania." Id. ¶ 20.

28.     The Andre complaint further alleges, "Ches-Mont Disposal, located at 216 West Seven Stars Road, Phoenixville, Pennsylvania 19460, was listed as the 'final user' of the truck on the McNeilus Invoice number 290122 dated October 22, 2001." Id. ¶ 21.

29.     Koons subsequently "entered into an 'Equipment Lease' with lessee, No Fun Allowed, Inc., predecessor entity to Ches-Mont Disposal, located at 200 Lincoln Avenue, Suite 111, The Byrne Building, Phoenixville, Pennsylvania 19460." Id. ¶ 24.

30.    It is alleged that "No Fun Allowed, d/b/a Ches-Mont Disposal (the lessee), leased the truck from Stephen P. Koons (the lessor) for a period of thirty-six (36) months at a rate of $2,657.41 a month." Id. ¶ 25.

31.    The lease states that "the truck is identified as the 'equipment' and described as a 2001 Mack Truck McNeilus Hi-Compaction, rear load compactor." Id. ¶ 26.

32.    Koons and No Fun Allowed, d/b/a Ches-Mont Disposal alleged "shared the same address of 200 Lincoln Avenue, Suite 111, Phoenixville, Pennsylvania 19460." Id. ¶ 27.

33.    The Andre complaint alleges, "On October 6, 2009, Defendant Koons, d/b/a Miller Concrete, remained the registered owner of the truck and No Fun Allowed, d/b/a Ches-Mont Disposal, remained the named lessee with both sharing the address of 2040 Lucon Road, P.O. Box 1500, Skippack, Pennsylvania 19474." Id. ¶ 28.

34.    The Andre action arose out of an accident involving the neutral safety system of the truck. According to the Andre complaint, "the neutral safety system is a required safety mechanism which prohibits the hydraulicly-powered [sic] power train take-off (hereinafter "PTO") from operating when the transmission remains in 'drive.' The PTO activates the container's hydraulic features which move the inside blade and open the container's rear door." Id. ¶ 31.

35.    The neutral safety system is necessary because the engagement of the PTO causes the truck's revolutions per minute to accelerate, which can cause the truck to move forward when the transmission is left in drive. Id. ¶ 32.

36.    The Andre complaint alleges that Jeremy Andre, a Ches-Mont Disposal employee, died on April 18, 2008 while operating the truck's PTO. Id. ¶ 33.

Case ID: 151103959

37.    According to the Andre complaint, "On April 18, 2008, Defendant Koons was a co-owner of Ches-Mont Disposal and the owner and lessor of the truck operated by Jeremy Andre for Ches-Mont Disposal, the truck's lessee." Id. ¶ 35.

38.    The incident allegedly occurred when Jeremy Andre attempted to unload trash by initiating the truck's hydraulic systems, but the truck began to unexpectedly move. Id. ¶ 44.

39.    Jeremy Andre became pinned between the truck's door and the inside of the cab as he tried to stop the truck by pushing the brake pedal with his hand. Id. ¶ 47-48.

40.    Andre alleges that, "Had the neutral safety system been operating properly on the day of this incident, the throttle advance would not have activated and the truck would have remained stopped when Andre activated the external container controls." Id. ¶ 52.

41.    As a result of the accident, the Andre Estate alleged that "Koons, d/b/a Miller Concrete's failure to make sure the neutral safety system was operable contributed to Andre's death." Id. ¶ 54.

42.    Koons, d/b/a Miller Concrete's alleged failure to properly maintain the gear selector lever and the parking brake system contributed to Andre's death. Id. ¶ 56-59.

43.    The Andre action sought to impose liability upon Koons for damages in tort.

44.    The Andre action did not seek to impose liability upon Koons for workers' compensation benefits.

45.    Ches-Mont made sole and exclusive use of the truck such that Ches-Mont is considered the owner of the truck.

46.    Koons was not Andre's employer, and the Andre complaint does not allege that Koons was Andre's employer.

Case ID: 151103959

47.     Koons was not a co-employee of Andre, and the Andre complaint does not allege that Koons was a co-employee of Andre.

48.     At the time of the incident described in the Andre complaint, Koons was not acting within the course and scope of his employment with Ches-Mont, and the Andre complaint does not allege that Koons was acting within the course and scope of his employment with Ches-Mont.

49.     Even though Koons was not an employee of Ches-Mont or acting within the course and scope of his employment with Ches-Mont, Koons was an executive officer of Ches-Mont, acting within the scope of his duties as such, qualifying Koons as an "Insured" under the Greenwich Policy.

50.     Koons was an officer and director of Ches-Mont.

51.     Koons was the owner and managing member of Ches-Mont Holdings LLC, the sole member of Ches-Mont.

52.     No Fun Allowed ("NFA") used the fictitious name "Ches-Mont Disposal."

53.     NFA changed its name and legally merged with Ches-Mont Disposal, Inc. 15 Pa. Cons. Stat. Ann. § 1929(a)-(b); Seven Springs Farm v. Croker, 801 A.2d 1212 (Pa. 2002).

54.     Ches-Mont Disposal, Inc. legally merged with Ches-Mont, with Ches-Mont as the surviving entity after merger.

55.     In the alternative, Ches-Mont was a mere continuation of NFA and Ches-Mont Disposal, Inc. Carpenter v. Fed. Ins. Co., 637 A.2d 1008 (Pa. Super. 1994).

56.     Koons tendered a claim to Greenwich for defense of the Andre action under the Greenwich Policy, which tender Greenwich denied.

57.   Erie accepted a tender of defense from Koons under the Erie Auto Policy for the claims in the <u>Andre</u> action.

58.   Erie incurred attorneys' fees and costs in the defense of Koons in the <u>Andre</u> action.

59.   The <u>Andre</u> action was settled for $1,125,000 paid on behalf of Koons by Erie.

## COUNT I – DECLARATORY JUDGMENT

60.   Erie incorporates by reference the preceding paragraphs of this Complaint.

61.   Koons is an executive officer of Ches-Mont who was acting within the scope of his duties as such.

62.   Koons was not an employee of Ches-Mont and was not acting within the course and scope of his employment with Ches-Mont.

63.   Koons, Defendant in the <u>Andre</u> action, is an "Insured" under Coverage B of the Greenwich Policy.

64.   Greenwich asserted that the claims in the <u>Andre</u> action were not covered under "Scheduled Underlying Insurance" as defined by the Greenwich Policy.

65.   The <u>Andre</u> action alleges that an "Insured" under the Greenwich Policy may be legally obligated to pay damages because of "Bodily Injury" that is not covered under "Scheduled Underlying Insurance."

66.   The "Bodily Injury" alleged in the <u>Andre</u> action was alleged to have been caused by an "Occurrence" happening anywhere, and the "Bodily Injury" allegedly occurred during the "Policy Period."

67.   Greenwich has a duty to defend under Coverage B for a "Suit" that seeks damages because of "Bodily Injury" when such damages would not be covered under "Scheduled Underlying Insurance."

Case ID: 151103959

68.     The <u>Andre</u> action did not allege any claims for liability under any Workers'
Compensation, Unemployment Compensation, or Disability Benefits Law, or any similar law.

69.     The <u>Andre</u> action did not allege any claims for liability of any employee with
respect to "Bodily Injury" to another employee of the same employer injured in the course of
such employment.

70.     The factual allegations in the <u>Andre</u> action triggered a duty to defend under the
Greenwich Policy.

71.     No exclusions in the Greenwich Policy applied to preclude coverage for the
claims asserted in the <u>Andre</u> action.

72.     Greenwich owed a duty to indemnify Koons in the <u>Andre</u> action.

73.     The truck is not an "owned auto" under the Erie Auto Policy because it is not
described on the declarations.

74.     The truck was insured by Ches-Mont as an owned "auto" under the automobile
liability policy issued by XL Insurance America, Inc.

75.     Ches-Mont was the owner of the truck by virtue of its exclusive use and
possession of the truck in connection with its trash removal business. <u>Aetna Cas. & Sur. v.
Duncan</u>, 979 F. 2d 523 (3d Cir. 1992); <u>Am. Alliance Ins. Co. v. Penn Miller's Ins. Co.</u>, 2004
U.S. Dist. LEXIS 11305 (E.D. Pa. 2004); <u>Auto. Ins. Co. v. Curran</u>, 994 F. Supp. 324 (E.D. Pa.
1998).

76.     The Erie Auto Policy provides excess coverage for an "auto we insure" that is not
an "owned auto."

77.     The Greenwich Policy and the Erie Auto Policy each purport to be excess
insurance.

Case ID: 151103959

78.     The Greenwich Policy and the Erie Auto Policy must share equally in the defense

and indemnification in the Andre action because the respective policies contain "other insurance"

conditions that are mutually repugnant and irreconcilable. Am. Cas. Co. v. PHICO Ins. Co., 702

A.2d 1050 (Pa. 1997).

79.     Erie has paid more than its share to discharge the liability of Koons in the Andre

action.

80.     Erie is entitled to contribution or indemnification from Greenwich for defense

costs and indemnity payments that should have been paid by Greenwich.

WHEREFORE, Erie demands judgment in its favor, together with costs, interest, and the

following relief:

(1)     declaring that Greenwich owed a duty to defend Koons in the Andre action;

(2)     declaring that Greenwich owed a duty to indemnify Koons in the Andre action;

(3)     declaring that Erie is entitled to recover from Greenwich fifty (50) percent of costs

and attorneys' fees incurred to defend Koons in the Andre action;

(4)     declaring that Erie is entitled to recover from Greenwich fifty (50) percent of the

amount paid to discharge the liability of Koons in the Andre action;

(5)     judgment against Greenwich in the amount of fifty (50) percent of defense costs

and indemnity payments made by Erie on behalf of Koons in the Andre action; and

(6)     such other and further relief, as the Court may deem appropriate.

### COUNT II – BREACH OF CONTRACT/EQUITABLE SUBROGATION

81.     Erie incorporates by reference the preceding paragraphs of this Complaint.

82.     Erie paid defense costs and made indemnity payments on behalf of Koons in the

Andre action, and is subrogated to the rights and interests of Koons against Greenwich, by virtue

Case ID: 151103959

of the terms and conditions of the Erie Auto Policy, the Erie BCL Policy, and an assignment of rights.

83.     As a result of Greenwich's failure to defend and indemnify Koons in the <u>Andre</u> action, Erie was forced to pay defense costs and make indemnity payments that were in fact owed by Greenwich.

84.     Greenwich breached the terms and conditions of the Greenwich Policy by failing to defend and indemnify Koons in the <u>Andre</u> action.

85.     Greenwich is liable for damages as a result of its breach of the terms and conditions of the Greenwich Policy. <u>U.S. Fire Ins. Co. v. Royal Ins. Co.</u>, 759 F.2d 306 (3d Cir. 1985).

**WHEREFORE**, Erie demands judgment in its favor, together with costs, interest, and the following relief:

(1)     declaring that Greenwich owed a duty to defend Koons in the <u>Andre</u> action;

(2)     declaring that Greenwich owed a duty to indemnify Koons in the <u>Andre</u> action;

(3)     declaring that Erie is entitled to recover from Greenwich fifty (50) percent of costs and attorneys' fees incurred to defend Koons in the <u>Andre</u> action;

(4)     declaring that Erie is entitled to recover from Greenwich fifty (50) percent of the amount paid to discharge the liability of Koons in the <u>Andre</u> action;

(5)     judgment against Greenwich in the amount of fifty (50) percent of defense costs and indemnity payments made by Erie on behalf of Koons in the <u>Andre</u> action; and

(6)     such other and further relief, as the Court may deem appropriate.

## COUNT III – EQUITABLE CONTRIBUTION AND INDEMNIFICATION

86.     Erie incorporates by reference the preceding paragraphs of this Complaint.

87.     Koons was entitled to insurance coverage under the Greenwich Policy for the claims asserted in the <u>Andre</u> action.

88.     Greenwich refused to defend Koons in the <u>Andre</u> action or pay any defense costs.

89.     Greenwich refused to contribute towards the settlement payment made by Erie on behalf of Koons in the <u>Andre</u> action, despite Greenwich's obligation to do so under the Greenwich Policy.

90.     Greenwich has been unjustly enriched by retaining funds that it was obligated to pay for the defense and indemnification of Koons in the <u>Andre</u> action.

91.     Erie is entitled to contribution or indemnification from Greenwich for those amounts paid by Erie which should have been paid by Greenwich, including the costs incurred to defend Koons in the <u>Andre</u> action and the indemnity payments made to discharge the liability of Koons in the <u>Andre</u> action. <u>J.H. France Refractories Co. v. Allstate Ins. Co.</u>, 626 A.2d 502 (Pa. 1993).

**WHEREFORE**, Erie demands judgment in its favor, together with costs, interest, and the following relief:

(1)     declaring that Greenwich owed a duty to defend Koons in the <u>Andre</u> action;

(2)     declaring that Greenwich owed a duty to indemnify Koons in the <u>Andre</u> action;

(3)     declaring that Erie is entitled to recover from Greenwich fifty (50) percent of costs and attorneys' fees incurred to defend Koons in the <u>Andre</u> action;

(4)     declaring that Erie is entitled to recover from Greenwich fifty (50) percent of the amount paid to discharge the liability of Koons in the <u>Andre</u> action;

(5)     judgment against Greenwich in the amount of fifty (50) percent of defense costs and indemnity payments made by Erie on behalf of Koons in the <u>Andre</u> action; and

(6)    such other and further relief, as the Court may deem appropriate.

**FOWLER HIRTZEL MCNULTY &**
**SPAULDING, LLP**

**DATED:** November 30, 2015

BY:  **/S/ ALLAN C. MOLOTSKY**
        ALLAN C. MOLOTSKY, ESQUIRE
        DENNIS CHOW, ESQUIRE
        Attorneys for Plaintiff
        Erie Insurance Exchange

Case ID: 151103959

## VERIFICATION

I hereby verify that the statements made by *Erie Insurance Exchange* and contained in the foregoing *Complaint* are true and correct to the best of my knowledge, information and belief. I understand that any false statements contained herein are subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

I certify that I am a duly authorized representative of *Erie Insurance Exchange* and, as such, am authorized to make this Verification on its behalf.

BY: _Christine Girandola_

Christine Girandola
Commercial Liability Claims
Specialist

Dated: __11/24/15__

Case ID: 151103959

# EXHIBIT "A"

Filed and Attested by
PROTHONOTARY
30 NOV 2015 04:58 pm
K. EDWARDS

**XL INSURANCE**

## GREENWICH INSURANCE COMPANY

**ADMINISTRATIVE OFFICE**
Seaview House
70 Seaview House
Stamford, CT 06902-6040
(800) 688-1840

**HOME OFFICE**
1201 North Market Street
Suite 501
Wilmington, DE 19801
(800) 688-1840

### Commercial Excess Follow Form And Umbrella Liability Policy (Occurrence) Declarations

Policy Number:     UEC001995402
Renewal of:        UEC001995401

1:  Named Insured:      CHESMONT DISPOSAL COMPANY, LLC
    Address:            2040 LUCON ROAD
    City/State/Zip:     SCHWENKSVILLE, PA 19473

    **Named Insured is:**
    ☐ Individual    ☐ Partnership    ☒ Corporation    ☐ Joint Venture    ☐ Other _____

2:  Policy Period:

    From: January 23, 2008 To January 23, 2009
          12:01 A.M. standard time at your mailing address shown above.

3:  Premium:            $ 58,832

    Minimum Premium:    $ Not Applicable

    Rating Base:        Underlying primary premium
    Rate:               Not applicable            Per $  Not applicable

    1st Anniversary:
    2nd Anniversary:

3a: Premium For Certified Acts of Terrorism:      $ Excluded
3b: Premium For Non-Certified Acts of Terrorism:  $ Excluded

4:  Limits of Liability:

    (a) Each Occurrence                              $ 5,000,000
    (b) **Products Completed Operations** Aggregate  $ 5,000,000
        (where applicable)
    (c) General Aggregate                            $ 5,000,000
    (d) Self-Insured Retention                       $ 10,000

GIC-CUP1D (2/03)                          Page  1
©, 2005, XL America, Inc.
MOON  02/25/2008

Broker Copy

App. 147

5:   Endorsements Attached to this Policy

| Endorsement Number | Endorsement Form | Endorsement Title |
|---|---|---|
| | GICCUP1CP | Commercial Excess Follow Form and Umbrella Liability Policy |
| Endorsement No. 001 | IL MP 9104 07 04 GIC | In Witness Endorsement |
| Endorsement No. 002 | GIC-CUP1S 02.03 | Schedule of Underlying Insurance |
| Endorsement No. 003 | CEUE131 07 99 | Radioactive Matter Exclusion Endorsement |
| Endorsement No. 004 | CEUE103 07 99 | Superfund Exclusion Endorsement |
| Endorsement No. 005 | CEUE102 07 99 | Pollution Exclusion With Exceptions For Automobile Loading And Unloading |
| Endorsement No. 006 | MCS90 04 00 | Motor Carrier Endorsement |
| Endorsement No. 007 | CEUE113 07 99 | Broad Form Professional Liability Exclusion Endorsement |
| Endorsement No. 008 | CEUE154 07 99 | Contractor's Excluded Hazards Endorsement |
| Endorsement No. 009 | CEUE119 07 99 | Lead Liability Exclusion Endorsement |
| Endorsement No. 010 | GU207 07 99 | Additional Named Insured Endorsement |
| Endorsement No. 011 | CEUE156 09 01 | Amendment of Exclusion S. - "No Fault", "Uninsured Motorist" or "Underinsured Motorist" Laws |
| Endorsement No. 012 | CEUE159 11 02 | Exclusion Of Certified Acts Of Terrorism And Other Acts Of Terrorism |
| Endorsement No. 013 | CEUE162 09 03 | War Liability Exclusion |
| Endorsement No. 014 | CEUE164 04 04 | Mold, Rot or Other Fungi Exclusion Endorsement |
| Endorsement No. 015 | CEUE165 01 07 | Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act) |
| Endorsement No. 016 | CEUE-PA2 07 99 | Pennsylvania Asbestos Exclusion Endorsement |
| Endorsement No. 017 | CEUE-PA1 07 99 | Pennsylvania Cancellation/Nonrenewal Endorsement |
| Endorsement No. 018 | CEUE-PANOT 07 99 | Pennsylvania Notice |
| Endorsement No. 019 | PN CW 02 05 05 | Notice To Policyholders - Privacy Policy |
| Endorsement No. 020 | PN CW 05 01 06 | Notice To Policyholders – U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") |
| Endorsement No. 021 | CEUE PN10 1106 | Notice To Policyholder - Potential Restrictions Of Terrorism Coverage |
| Endorsement No. 022 | PN CW 01 01 07 | Notice To Policyholders - Fraud Notice |

Broker Name:      Hatfield Group, LLC
Address:          311 Sumneytown Pike, Suite 1F
City/State/Zip:   North Wales, PA 19454

_(signature)_

(Authorized Representative)

MCCL      02/25/2008
MOON      0005079642

GIC-CUP1D (2/03)
© 2005, XL America, Inc.
MOON  02/25/2008

Page 2

## GREENWICH INSURANCE COMPANY
## STAMFORD, CONNECTICUT

## COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY
### (A Stock Insurance Company Herein Called the Company)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we", "us" and "our" refer to the Greenwich Insurance Company (hereinafter referred to as the **Company**).

The word **Insured** means any person or organization qualifying as such under **Section VI. Definitions**.

Other words and phrases that appear in bold print have special meaning. See **Section VI. Definitions**.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, the **Company** agrees to provide coverage as follows:

## I. INSURING AGREEMENTS

**COVERAGE**

**Coverage A – Excess Follow Form Liability Over Occurrence Coverage**

A.    The Company will pay on behalf of the **Insured** those sums in excess of the total applicable limits of **Scheduled Underlying Insurance** that the **Insured** becomes legally obligated to pay as damages provided the damages would be covered by **Scheduled Underlying Insurance**.

B.    Coverage A shall follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this Policy. If any provisions of **Scheduled Underlying Insurance** conflict with any provisions of this Policy, the provisions of this Policy will apply. However the **Company** will have no duty to defend the **Insured** against any **Suit** seeking damages to which this insurance does not apply.

C.    Coverage A of this policy will not, in any event, provide broader coverage than that provided by **Scheduled Underlying Insurance**.

D.    If we are prevented by law or statute from paying damages on behalf of the **Insured** to which this insurance applies, then the **Company** will indemnify the **Insured** for those sums in excess of the total applicable limits of **Scheduled Underlying Insurance**.

E.    The amount we will pay for damages is limited as described in Section III. Limits of Insurance.

F.    If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by this policy the **Company** will,

     1.    in the event of reduction, pay in excess of the reduced underlying limits of insurance: or

GIC-CUP1CP (2/03)
© 2003, XL Environmental, Inc.
MOON 02/25/2008

Page 1

2. In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

**Coverage B -- Umbrella Occurrence Based Liability Coverage Over Self-Insured Retention**

A. The Company will pay on behalf of the Insured those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury not covered by Scheduled Underlying Insurance, provided that:

   1. the Bodily Injury or Property Damage is caused by an Occurrence happening anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period.

   2. the Personal Injury or Advertising Injury is caused by an Occurrence happening anywhere, and the Occurrence takes place during the Policy Period.

   However, the Company will have no duty to defend the Insured against any Suit seeking damages to which this insurance does not apply.

B. Coverage B will not apply to damages that would have been covered by Scheduled Underlying Insurance, except for the exhaustion of the total applicable limits of Scheduled Underlying Insurance by the payment of Loss.

C. If the Company is prevented by law or statute from paying damages on behalf of the Insured to which this insurance applies, then we will indemnify the Insured for those sums in excess of the Self-Insured Retention.

D. The amount the Company will pay for damages is limited as described in Section III. Limits of Insurance.

E. Coverage B will not apply to any Loss for which insurance is afforded under Coverage A or which arises out of subjects of insurance or exposures to loss for which underlying policies of insurance are required to be maintained hereunder.

## II. DEFENSE PROVISIONS

A. The Company shall have the right and duty to defend any Suit against the Insured that seeks damages covered by this policy:

   1. under Coverage A, when the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss.

   2. under Coverage B, when the damages sought because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury would not be covered by Scheduled Underlying Insurance.

   The Company shall have the right and duty to defend any Suit against the Insured that seeks damages covered by this policy, even if the Suit is groundless, false or fraudulent.

   If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. When we assume the defense of any Suit against the Insured that seeks damages covered by this policy, we will:

   1. investigate, negotiate and settle the Suit as we deem appropriate; and

GIC-CUP1CP (2/03)
©, 2003, XL Environmental, Inc.
MOON 02/25/2008

Page 2

Broker Copy
App. 150

2. pay the following supplementary payments to the extent that such payments are not covered by Scheduled Underlying Insurance:

   a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds required by law to appeal the Suit, but we are not obligated to apply for or furnish any such bond;

   c. all costs taxed against the Insured in the Suit;

   d. pre-judgment interest awarded against the Insured on that part of the judgment we pay. If we make a settlement offer within the applicable Limits of Insurance of this policy that is acceptable to the claimant, we will not pay any pre-judgment interest accruing after we make such offer;

   e. post-judgment interest that accrues after entry of judgement and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

   f. the Insured's expenses incurred at our request or with our consent.

C. Except as provided in Paragraph A. above, the Company shall have no duty to defend any Suit against the Insured. We will, however, have the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

D. We will not defend any Suit or investigate any claim after the exhaustion of the total applicable Limits of Insurance of this policy by the payment of Loss.

## III. LIMITS OF INSURANCE

A. With respect to Coverages A and B, the Limits of Insurance shown in Item 4 of the Declarations and the rules below state the most we will pay regardless of the number of:

   1. Insureds;

   2. claims made or Suits brought against any or all Insureds;

   3. persons or organizations making claims or bringing Suits; or

   4. coverages provided under this policy.

B. The General Aggregate Limit stated in Item 4c. of the Declarations is the most we will pay for all damages under Coverage A and separately under Coverage B, except for:

   1. damages covered by the Products-Completed Operations Hazard; and

   2. damages covered by Scheduled Underlying Insurance to which no aggregate limit applies.

   In addition, with respect to Coverage A only, if Scheduled Underlying Insurance contains an aggregate limit, other than an aggregate applying to the Products-Completed Operations Hazard, the General Aggregate Limit stated in Item 4c. of the Declarations will apply in the same manner as the aggregate limit of any such Scheduled Underlying Insurance.

GIC-CUP1CP (2/03)                                     Page 3
© 2003, XL Environmental, Inc.
MOON 02/25/2008

C.     The Products-Completed Operations Aggregate Limit stated in Item 4b. of the Declarations is the most we will pay for all damages included in the Products-Completed Operations Hazard for Coverage A and Coverage B combined.

D.     Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 4a. of the Declarations is the most we will pay for the sum of all damages under Coverage A and Coverage B combined arising out of any one Occurrence.

E.     Coverage A applies only in excess of the total applicable limits of Scheduled Underlying Insurance. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

   1.     greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

   2.     less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

F.     Expenses incurred to defend any Suit or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy, unless otherwise provided by **Scheduled Underlying Insurance.**

G.     The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

## IV. EXCLUSIONS

### A.     Asbestos

Under Coverages A and B, this insurance does not apply to any liability arising out of:

   1.     the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

   2.     any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

   3.     any obligation to defend any Suit or claim against the Insured that seeks damages if such Suit or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

### B.     Various Laws

Under Coverages A and B, this insurance does not apply to any liability under any of the following:

   1.     the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revision thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world; or

   2.     any Workers' Compensation, Unemployment Compensation, or Disability Benefits Law, or any similar law.

Broker Copy
App. 152

Case: Case 2:16-cv-00015-GJP   Document 1-3   Filed 01/04/16   Date Filed 11/30/2014

**C.    Securities**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.    the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

2.    any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

3.    any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

**D.    Employment Practices**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.    failure to hire any prospective employee or any applicant for employment;

2.    termination of any employee;

3.    failure to promote or advance any employee; or

4.    employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a past, present, future or prospective employee.

This exclusion applies:

1.    whether the **Insured** may be liable as an employer or in any other capacity; and

2.    to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**E.    Care, Custody and Control**

Under Coverages A and B, this insurance does not apply to **Property Damage** to:

1.    property you own, rent or occupy;

2.    premises you sell, give away or abandon if the **Property Damage** arises out of any part of those premises;

3.    property loaned to you;

4.    personal property in the care, custody or control of the **Insured**;

5.    at particular part of real property on which you or any contractors working directly or indirectly on your behalf are performing operations if the **Property Damage** arises out of those operations; or

6.    that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

GIC-CUP1CP (2/03)                         Page 5
© 2003, XL Environmental, Inc.
MOON  02/25/2008

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to **Property Damage** included in the Products-Completed Operations Hazard.

F.   **Nuclear Liability**

Under Coverages A and B, this insurance does not apply to:

1.   any liability:

   a.   with respect to which the Insured is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability;

   b.   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

   c.   resulting from the hazardous properties of nuclear material if:

      i)   the nuclear material (1) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf or (2) has been discharged or dispensed therefrom;

      ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

      iii) the injury or damage arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion iii applies only to Property Damage to such nuclear facility and any property thereat.

2.   As used in this exclusion:

   a.   "hazardous properties" includes radioactive, toxic or explosive properties;

   b.   "nuclear material" means source material, special nuclear material or by-product material;

   c.   "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

   d.   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

GIC-CUP1CP (2/03)
©, 2003, XL Environmental, Inc.
MOON 02/25/2008

Page 6

Broker Copy
App. 154

Case 2:16-cv-00015-GJP   Document 1-3   Filed 01/04/16   Page 39 of 73

e.   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

f.   "nuclear facility" means:

i)   any nuclear reactor;

ii)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

iii)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

iv)   any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g.   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.   **Property Damage** includes all forms of radioactive contamination of property.

## G.   Pollution - Coverage A

Under Coverage A, this insurance does not apply to:

1.   any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

a.   at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any **Insured**;

b.   at or from any premises, site or location that is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

c.   that are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom you may be legally responsible;

d.   at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor;

e.   at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of **Pollutants**;

f.   that are contained in any property that is:

Broken Copy

i) being transported or towed by, handled or handled for movement into, onto or from an Auto covered by Scheduled Underlying Insurance;

ii) otherwise in the course of transit by or on behalf of the Insured; or

iii) being stored, disposed of, treated or processed in or upon an Auto covered by Scheduled Underlying Insurance;

g. i) before the Pollutants or any property in which the Pollutants are contained are moved from the place where they are accepted by the Insured for movement into or onto an Auto covered by Scheduled Underlying Insurance; or

ii) after the Pollutants or any property in which the Pollutants are contained are moved from the Auto covered by Scheduled Underlying Insurance to the place where they are finally delivered, disposed of or abandoned by the Insured.

2. any Loss, cost or expense arising out of any:

a. request, demand order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of Pollutants; or

b. claim or Suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of Pollutants.

However, the following exceptions to Paragraph 1. of this Pollution exclusion for Coverage A shall apply:

1) Products-Completed Operations Hazard: Paragraphs 1. a. through 1. e. do not apply with respect to Bodily Injury or Property Damage included within the Products-Completed Operations Hazard provided that Your Product or Your Work has not at any time been:

a) discarded, dumped, abandoned, thrown away; or

b) treated or handled as waste;

by anyone.

2) Hostile Fire: Paragraphs 1. a. and 1. d. do not apply with respect to Bodily Injury or Property Damage arising out of heat, smoke or fumes from a Hostile Fire.

3) Equipment to Heat the Building and Contractor/Lessee Operations: Paragraph 1. a. of this exclusion does not apply to:

a) Bodily Injury sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

b) Bodily Injury or Property Damage for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional Insured with respect to your ongoing operations performed for that additional Insured at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that additional Insured.

4) Fuels, Lubricants and Other Operating Fluids - Mobile Equipment: Paragraph 1. d. of this exclusion does not apply to:

GIC-CUP1CP (2/03)
©, 2003, XL Environmental, Inc.
MOON 02/25/2008

Page 8

Broker Copy

a) Bodily Injury or Property Damage arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of Mobile Equipment or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the Bodily Injury or Property Damage arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such Insured Contractor or subcontractor; or

b) Bodily Injury or Property Damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto:** Paragraph 1. f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar Pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an Auto covered by Scheduled Underlying Insurance or its parts if:

a) the Pollutants escape, seep, migrate or are discharged, dispersed or released directly from an Auto part designed by its manufacturer to hold, store, receive or dispose of such Pollutants; and

b) the Bodily Injury or Property Damage does not arise out of the operation of any equipment listed in Paragraphs 6. b. and 6. c. of the definition of Mobile Equipment.

6) **Upset, Overturn or Damage of an Auto:** Paragraph 1. g. does not apply to Occurrences that take place away from premises owned by or rented to an Insured with respect to Pollutants not in or upon an Auto covered by Scheduled Underlying Insurance if:

a) the Pollutants or any property in which the Pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an Auto covered by Scheduled Underlying Insurance; and

b) the discharge, dispersal, seepage, migration, release or escape of the Pollutants is caused directly by such upset, overturn or damage.

**H. Pollution - Coverage B**

Under Coverage B, this insurance does not apply to:

1. **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants anywhere in the world;

2. any **Loss**, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or assess the effects of Pollutants; or

3. any **Loss**, cost or expense, including but not limited to costs of investigation or attorney's fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants.

**I. Damage to Impaired Property**

Under Coverage B, this insurance does not apply to Property Damage to Impaired Property or property that has not been physically injured, arising out of:

1.   a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

2.   a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the Loss of use of other property arising out of sudden and accidental physical injury to Your Product or Your Work after it has been put to its intended use.

**J.**   **Damage to Your Product**

Under Coverage B, this insurance does not apply to Property Damage to Your Product arising out of it or any part of it.

**K.**   **Damage to Your Work**

Under Coverage B, this insurance does not apply to Property Damage to Your Work arising out of it or any part of it and included in the Products-Completed Operations Hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**L.**   **Product Recall**

Under Coverage B, this insurance does not apply to damages claimed for any Loss, cost or expense incurred by you or others for the Loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.   **Your Product;**

2.   **Your Work; or**

3.   **Impaired Property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**M.**   **Employee to Employee**

Under Coverage B, this insurance does not apply to liability of any employee with respect to Bodily Injury or Personal Injury to another employee of the same employer injured in the course of such employment.

**N.**   **Willful Violation, Falsity, Prior Publication, Criminal, Assumed Liability**

Under Coverage B, this insurance does not apply to Personal Injury or Advertising Injury:

1.   caused by or at the direction of any Insured with the knowledge that the act would violate the rights of another and would inflict Personal Injury or Advertising Injury;

2.   arising out of oral, written or electronic publication of material if done by or at the direction of any Insured with knowledge of its falsity;

3.   arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the Policy Period;

GIC-CUP1CP (2/03)
©, 2003, XL Environmental, Inc.
MOON  02/25/2008

Page 10

4.  arising out of a criminal act committed by or at the direction of any **Insured**; or

5.  for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

6.  arising out of a breach of contract, except an implied contract to use another's advertising idea;

7.  arising out of the failure of goods, products or services to conform with any statement of quality or performance made;

8.  arising out of the wrong description of the price of goods, products or services;

9.  committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting; or

10. arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time.

**O.**   **Watercraft, Aircraft**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

**P.**   **War**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**Q.**   **Expected or Intended**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the Insured. However, this exclusion does not apply to:

1.  **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property; or

2.  liability of the Named **Insured** for damages as the result of an act committed by the Named **Insured**'s employee(s) which results in **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the Named **Insured**'s employee(s), provided such act was not committed at the direction of the Named **Insured**.

**R.**   **Liquor Liability**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1.  causing or contributing to the intoxication of any person;

2.  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

©, 2003, XL Environmental, Inc.
MOON 02/25/2008

Broker Copy

S. "No-Fault", "Uninsured Motorist" or "underinsured Motorist" Laws

Under Coverage B, this insurance does not apply to any obligation of the Insured under any "No-Fault", "Uninsured Motorist" or "underinsured Motorist" law.

V. CONDITIONS - APPLICABLE TO COVERAGES A AND B

A. Appeals

If the Insured or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance,** we may elect to do so. If we appeal, we shall be liable for, in addition to the applicable Limits of Insurance of this policy, all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy, and for up to three (3) years after the expiration or termination of this policy.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance.**

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. If notice is mailed, proof of mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The **Policy Period** will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 3 of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 3 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.


©, 2003, XL Environmental, Inc.

7.    The first Named Insured in Item 1 of the Declarations shall act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.    Any of these provisions that conflict with a law that controls the cancellation of this policy is changed by this statement to comply with that law.

E.    Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make a part of this policy.

F.    Duties in the Event of an Occurrence, Claim or Suit

1.    You must see to it that we are notified as soon as practicable of an Occurrence that may result in a claim or Suit under this policy. To the extent possible, notice should include:

a.    how, when and where the Occurrence took place;

b.    the names and addresses of any injured persons and any witnesses; and

c.    the nature and location of any injury or damage arising out of the Occurrence.

2.    If a claim is made or Suit is brought against any Insured which is reasonably likely to involve this policy, you must notify us in writing:

a.    under Coverage A, as soon as practicable and in accordance with the reporting provisions of Scheduled Underlying Insurance.

b.    under Coverage B, as soon as practicable.

Written notice should be mailed or delivered to the Company.

3.    You and any other involved Insured must:

a.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or Suit;

b.    authorize us to obtain records and other information;

c.    cooperate with us in the investigation, settlement or defense of the claim or Suit; and

d.    assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the Insured because of injury or damage to which this insurance may also apply.

4.    No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

G.    Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

H.    Inspection

GIC-CUP1CP (2/03)                                              Page 13
©, 2003, XL Environmental, Inc.
MOON  02/25/2008

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

I.   **Knowledge of Occurrence, Claim or Suit**

Knowledge of an **Occurrence**, claim or **Suit** by your agent, servant or employee shall not in itself constitute knowledge by you, unless a principal of yours shall have received notice of such **Occurrence**, claim or **Suit** from said agent, servant or employee.

J.   **Legal Actions Against the Company**

There will be no right of action against us under this insurance unless:

1.   you have complied with all the terms of this policy; and

2.   the amount you owe has been determined with the Company's consent or by actual trial and final judgment.

K.   **Maintenance of Scheduled Underlying Insurance**

During the **Policy Period**, you agree:

1.   to keep **Scheduled Underlying Insurance** in full force and effect;

2.   that the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3.   that the total applicable limits of **Scheduled Underlying Insurance** shall not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss**; and

4.   that any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would had you fully complied with these requirements.

L.   **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M.   **Premium**

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

Broker Copy
App. 162

The premium for this policy shall be computed on the basis set forth in Item 3 of the Declarations. At the beginning of the Policy Period, you must pay us the Advance Premium shown in Item 3 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we shall retain the Minimum Premium as shown in Item 3 of the Declarations for each twelve months of the Policy Period.

**N.      Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first Named Insured designated in Item 1 of the Declarations, this insurance applies:

1.       as if each Named Insured were the only Named Insured; and

2.       separately to each Insured against whom claim is made or Suit is brought.

**O.      Transfer of Rights of Recovery**

1.       If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after Loss to impair these rights and must help us enforce them.

2.       Any recoveries shall be applied as follows:

   a.      any person or organization, including the Insured, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b.      we then will be reimbursed up to the amount we have paid; and

   c.      lastly, any person or organization, including the Insured, that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery shall be apportioned among the persons or organizations, including the Insured, in the ratio of their respective recoveries as finally settled.

3.       If, prior to the time of an Occurrence, you and the insurer of Scheduled Underlying Insurance waive any right of recovery against a specific person or organization for injury or damage as required under an Insured Contract, as that term is defined under Coverage B, we will also waive any rights we may have against such person or organization.

**P.      Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**Q.      Unintentional Failure to Disclose**

GIC-CUP1CP (2/03)                        Page 15
© 2003, XL Environmental, Inc.
MOON 02/25/2008

Broker Copy
App. 163

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

**R.    Titles of Paragraphs**

The titles of the varied paragraphs of this Policy and endorsements, if any, attached to this Policy, are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

**S.    When Damages are Payable**

We will not make any payment under this policy unless and until:

1.    under Coverage A, the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss.**

2.    under Coverage B, the **Self-Insured Retention** has been exhausted by the payment of **Loss.**

When the amount of **Loss** has finally been determined, we will promptly pay on behalf of the **Insured** the amount of such Loss within the applicable Limits of Insurance of this policy.

You shall promptly reimburse us for any amount within the **Self-Insured Retention** paid by us on behalf of the **Insured.**

## VI.  DEFINITIONS

**Advertisement** under Coverage B means a notice that is broadcast, publication or telecast to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**Advertising Injury** under Coverage B means injury, other than **Bodily Injury or Personal Injury**, arising solely out of your **Advertisement** as a result of one or more of the following offenses:

1.    slander or libel of a person or organization, or disparagement of a person's or organization's goods, products or services in your **Advertisement;**

2.    violation of a person's right of privacy in your **Advertisement;**

3.    the use of another's advertising idea in your **Advertisement;** or

4.    infringement upon another's copyright, trade dress or slogan in your **Advertisement.**

**Auto** under Coverage B and under any exclusion in this policy applicable to Coverage A means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto** does not include **Mobile Equipment.**

**Bodily Injury** under Coverage B and under any exclusion in this policy applicable to Coverage A means **Bodily Injury**, sickness, disability or disease, including death resulting from any of these at any time. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from **Bodily Injury**, sickness, disability or disease.

**Hostile Fire** under Coverage B and under any exclusion in this policy applicable to Coverage A means a fire that becomes uncontrollable or breaks out from where it was intended to be.

**Impaired Property** under Coverage B means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

GIC-CUP1CP (2/03)
©, 2003, XL Environmental, Inc.
MOON  02/25/2008

Page 16

1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. your fulfilling the terms of the contract or agreement.

**Insured** under Coverage A means:

1. the **Named Insured**; and

2. any person or organization that is an **Insured** under **Scheduled Underlying Insurance**.

**Insured** under Coverage B means:

1. the **Named Insured**;

2. if you are an individual, your spouse, but only with respect to the conduct of a business of which you are the sole owner;

3. your partners, joint venture members, executive officers, employees, directors, stockholders or volunteers while acting within the scope of their duties as such;

4. any person or organization while acting as your real estate manager;

5. your legal representative if you die, but only with respect to duties as such; and

6. any person or organization to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of operations conducted by you or on your behalf.

Notwithstanding any of the above, no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership or joint venture that is not designated in Item 1 of the Declarations as a **Named Insured.**

**Insured Contract** under Coverage B means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. However, the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** must arise out of an **Occurrence** that takes place subsequent to the execution of the **Insured Contract.** Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Solely for the purposes of liability assumed under an **Insured Contract,** reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury,** provided:

1. liability to such party for that party's reasonable attorney's fees and necessary litigation expenses has also been assumed in the same **Insured Contract;** and

2. such reasonable attorney's fees and necessary litigation expenses are for defense of that party against a **Suit** seeking damages covered by this policy.

GIC-CUP1CP (2/03)                                    Page 17
©, 2003, XL Environmental, Inc.
MOON 02/25/2008

Broker Copy
App. 165

**Loss** under Coverages A and B means those sums actually paid as judgements and settlements and, under Coverage A if provided by **Scheduled Underlying Insurance**, expenses incurred to defend any **Suit** or to investigate any claim.

**Mobile Equipment** under Coverage B and under any exclusion in this policy applicable to Coverage A means any of the following types of land vehicles, including any attached machinery or equipment:

    1.      bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    2.      vehicles maintained for use solely on or next to premises you own or rent;

    3.      vehicles that travel on crawler treads;

    4.      vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        a.      power cranes, shovels, loaders, diggers or drills; or

        b.      road construction or resurfacing equipment such as graders, scrapers or rollers;

    5.      vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        a.      air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        b.      cherry pickers and similar devices used to raise or lower workers;

    6.      vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

        However, self- propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

        a.      equipment designed primarily for:

            i)      snow removal;

            ii)      road maintenance, but not construction or resurfacing; or

            iii)      street cleaning;

        b.      cherry pickers and similar devices mounted on **Auto** or truck chassis and used to raise or lower workers; and

        c.      air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**ad Insured** under Coverage A means any person or organization that is a **Named Insured** or the equivalent **of in Scheduled Underlying Insurance.**

**ed Insured** under Coverage B means:

    1.      any person or organization designated in Item 1 of the Declarations;

UP1CP (2/03)
I, XL Environmental, Inc.
I 02/25/2008

Page 18

2.  any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy and to which more specific insurance does not apply; and

3.  any organization, except for a partnership or a joint venture, that you acquire or form during the Policy Period in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

    (a)  this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury** or **Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization; and

    (b)  you give us prompt notice after you acquire or form such organization.

    A partnership or a joint venture that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

**Occurrence** under Coverage A means the definition given to that term or the equivalent thereof in **Scheduled Underlying Insurance**.

**Occurrence** under Coverage B means:

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions shall be deemed to arise out of one **Occurrence**.

2.  as respects **Personal Injury** or **Advertising Injury**, an offense arising out of your business that causes **Personal Injury** or **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

**Other Insurance** under Coverages A and B means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

**Personal Injury** under Coverage B means injury arising out of your business, other than **Bodily Injury** or **Advertising Injury**, caused by one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4.  oral, written or electronic publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.  oral, written or electronic publication of material that violates a person's right of privacy; or

GIC-CUP1CP (2/03)
©, 2003, XL Environmental, Inc.
MOON  02/25/2008

Broker Copy

6.  discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

   a.  not done intentionally by or at the direction of any **Insured**; and

   b.  not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any **Insured**.

**Policy Period** under Coverages A and B means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

**Pollutants** under Coverage B and under any exclusion in this policy applicable to Coverage A means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Products-Completed Operations Hazard** under Coverage B and under any exclusion in this policy applicable to Coverage A means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

   a.  when all of the work called for in your contract has been completed;

   b.  when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c.  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2.  the existence of tools, uninstalled equipment or abandoned or unused materials.

**Property Damage** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1.  physical injury to tangible property, including all resulting **Loss** of use of that property. All such **Loss** of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  **Loss** of use of tangible property that is not physically injured. All such **Loss** of use shall be deemed to occur at the time of the **Occurrence** that caused it.

**Scheduled Underlying Insurance** under Coverages A and B means:

1. the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

**Self-Insured Retention** under Coverage B means the amount applicable to each **Occurrence** for which the **Insured** is responsible that is shown in Item 4 of the Declarations.

**Suit** under Coverages A and B means a civil proceeding seeking damages covered by this policy. **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

**Your Product** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. **you;**

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product;** and

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**Your Work** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work;** and

GIC-CUP1CP (2/03)
©, 2003, XL Environmental, Inc.
MOON  02/25/2008

Page 21

Case 2:16-cv-00015-GJP   Document 1-3   Filed 01/04/16   Page 54 of 73   Date Filed 01/04/2014

2.      the providing of or failure to provide warnings or instructions.


IN WITNESS WHEREOF the Company has caused this Policy to be signed by its President and Secretary and counter-signed on the Declarations page by a duly authorized agent of the Company.



SECRETARY                                              PRESIDENT

# IN WITNESS ENDORSEMENT

GREENWICH INSURANCE COMPANY

ADMINISTRATIVE OFFICE:  SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040

STATUTORY HOME OFFICE:  1201 NORTH MARKET STREET
SUITE 501
WILMINGTON, DE 19801

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Dennis Kane
President

Kenneth P. Meagher
Secretary

IL MP 9104 0704 GIC
MOON 02/25/2008





## GREENWICH INSURANCE COMPANY

**ADMINISTRATIVE OFFICE**
Seaview House
70 Seaview Avenue
Stamford, CT 06902-6040
(800) 688-1840

**HOME OFFICE**
1201 North Market Street
Suite 501
Wilmington, DE 18801
(800) 688-1840

### Commercial Excess Follow Form And Umbrella Liability Policy
### Schedule Of Underlying Insurance

| Effective Date Of This Schedule: | Attached To And Forming Part Of Policy Number: |
|---|---|
| January 23, 2008 | UEC001995402 |

**ENDORSEMENT #002**

| UNDERLYING INSURER | TYPE OF COVERAGE | LIMITS OF LIABILITY | | |
|---|---|---|---|---|
| a. Name: GREENWICH INSURANCE CO.<br><br>Policy Number: GEC001995502<br><br>Term: January 23, 2008 To: January 23, 2009 | Commercial General Liability<br><br>[ ] Claims Made<br>[X] Occurrence<br><br>CG0001 12/07 | $ 1,000,000 each Occurrence<br>$ 2,000,000 General Aggregate<br>**(Other than Products Completed Operations)**<br>$ 2,000,000 **Products Completed Operations Aggregate**<br>$ 1,000,000 **Personal and Advertising Injury**<br>$ Other Liability | | |
| b. Name: XL INS. AMERICA, INC.<br><br>Policy Number: AEC001995302<br><br>Term: January 23, 2008 To: January 23, 2009 | Automobile Liability<br><br>CA0001 03/06 | **Bodily Injury Liability**<br>$ each Person<br>$ each Occurrence<br>**Property Damage Liability**<br>$ each Occurrence<br>or<br>$ 1,000,000 Combined Single Limit | | |
| c. Name: CONTINENTL. NTL. INDEMNTY<br><br>Policy Number: 46-008826-02-02<br><br>Term: July 1, 2007 To: July 1, 2008 | Employers' Liability | Coverage B – Employers' Liability<br>$ 500,000 each Accident Disease<br>$ 500,000 each Employee<br>$ 500,000 each Policy<br>$ each State | | |

GIC-CUP1S (2/03)
©, 2005, XL America, Inc.

Page 1

| d. Name:<br><br>Policy<br>Number:<br><br><br>Term:      To: | Miscellaneous<br><br>[ ]   Foreign<br>     Liability<br>[ ]   Non-Owned<br>     Aircraft<br>[ ]   Pollution or<br>     Professional | **Bodily Injury Liability**<br>$        each Person<br>$        each Occurrence<br><br>**Property Damage Liability**<br><br>$        each Occurrence<br>     or<br>$        Combined Single Limit<br>     or<br>$        other Occurrence<br>$        other Aggregate |

The Underlying Policies shown in this Schedule include the following coverage indicated by "X".

1. [X]   Comprehensive Automobile Liability including ALL owned, non-owned and hired cars.
2. [X]   Commercial General Liability including ALL Premises and Operations of the Insured.
3. [ ]   Liquor Legal Liability
4. [X]   Fire Legal Liability
5. [ ]   Defense included in the Limit of Liability
6. [X]   Employee Benefits Liability (claims made)
7.
8.


_____

(Authorized Representative)

### ENDORSEMENT #003

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### RADIOACTIVE MATTER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

Under Coverages A and B, this insurance does not apply to any liability, claims, suits, or proceedings for, based upon, arising from, attributable to, related to, or in any way connected with, in whole or in part, directly or indirectly, the actual, alleged, or threatened exposure of person(s) or property to any radioactive matter.

All other terms and conditions remain the same.

_____
(Authorized Representative)

CEUE131 (7/99)
MOON  02/25/2008

Broker Copy

## ENDORSEMENT #004

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SUPERFUND EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

Under Coverage B, this insurance does not apply to any liability arising from the **Named Insured's** transportation to any actual or proposed National Priority listed site (Superfund Sites).

This policy also does not provide coverage or defense for any claims arising out of work performed on any actual or proposed National Priorities listed site (Superfund Sites) other than those sites specifically scheduled onto this policy by endorsement.

All other terms and conditions remain the same.

_____
(Authorized Representative)

CEUE103 (7/99)
MOON 02/25/2008

App. 175

## ENDORSEMENT #005

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### POLLUTION EXCLUSION WITH EXCEPTIONS FOR AUTOMOBILE LOADING AND UNLOADING AND UPSET OR COLLISION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY (OCCURRENCE)

In consideration of the premium paid, it is understood and agreed that Section IV., **EXCLUSIONS**, subsection G., is deleted and replaced as follows:

G.    (I.)    **POLLUTION -- COVERAGE A**

Under Coverage A, this insurance does not apply to:

(1)    any liability which would not have occurred in whole or in part but for the actual, alleged, possible, or threatened, intentional or unintentional, discharge, disposal, dispersal, seepage, migration, release or escape of pollutants; or

(2)    Liability arising out of or in any way related to exposure to **pollutants**, including but not limited to the inhaling or ingesting of **pollutants**; or

(3)    Any loss, cost or expense arising out of or in any way related to any request, demand, order, directive, complaint or Suit by or on behalf of any person, group of persons or entity, including any governmental entity, that any Insured or any other person, group of persons or entity test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess pollutants or the effects of **pollutants**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

(II.)    It is further understood and agreed that Section (I.) of this endorsement shall not apply to any:

(1)    **Bodily Injury**

(2)    **Property Damage**, or

(3)    cost or expense arising out of:

(a)    Any request, demand, or order; or

(b)    Any Claim or Suit by or on behalf of a governmental authority demanding that the Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**,

CEUE102 (7/99)                                   Page 1
MOON 02/25/2008

caused by an accident and resulting from the ownership, maintenance or use of covered **Automobiles**, except where such **Bodily Injury, Property Damage,** or such cost or expense arises out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants:**

    (i)    Before the pollutants or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement into or onto the covered **Automobile;** or

    (ii)    After the pollutants or any property in which the **pollutants** are contained are moved from the covered **Automobile** to the place where they are finally delivered, disposed of or abandoned by the **Insured.**

Paragraphs (i) and (ii) above do not apply to accidents that occur away from the premises owned by or rented to an **Insured** with respect to **pollutants** not in or upon a covered **Automobile** if:

    (1)    The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **Automobile;** and

    (2)    The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage

        The extension of coverage provided by this endorsement shall not apply except insofar as such coverage is available to the **Insured** in all **Scheduled Underlying Insurance** for the full Limits of Liability of such **Scheduled Underlying Insurance,** and then only for the hazards for which coverage provided therein is identical or broader than the coverage provided by this endorsement.

All other terms and conditions remain the same.

_____
(Authorized Representative)

Broker App. 177

Case 2:16-cv-00015-GJP   Document 1-3   Filed 01/04/16   Page 62 of 73



U.S. Department
of Transportation
Federal Motor Carrier
Safety Administration

ENDORSEMENT # 006
ENDORSEMENT FOR
MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

FORM APPROVED
OMB No.: 2126-0008

| | | | | |
|---|---|---|---|---|
| Issued to | CHESMDNT DISPOSAL COMPANY, LLC | of | SCHWENKSVILLE, PA 19473 | |
| Dated at | Seaview House, 70 Seaview Avenue Stamford, CT 06902-6040 | this | 23rd | day of | January | 2008 |
| Amending Policy No. | UEC001995402 | Effective Date | January 23, 2008 | |
| Name of Insurance Company | Greenwich Insurance Company | | | |

Countersigned by

Authorized Company Representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "[X]," for the limits shown:
[ ]   This insurance is primary and the company shall not be liable for amounts in excess of $ _____ for each accident.
[X]   This insurance is excess and the company shall not be liable for amounts in excess of $   4,000,000   for each accident in excess of the underlying
        underlying limit of $ 1,000,000 for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all
its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of
a particular date. The telephone number to call is (610) 458-0570.
Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35
days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's
registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice
is received by the FMCSA at its office in Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions or which
results in bodily injury, property damage, or environmental damage which the
insured neither expected nor intended.
*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or
semitrailer propelled or drawn by mechanical power and used on a highway
for transporting property, or any combination thereof.
*Bodily Injury* means injury to the body, sickness, or disease to any person,
including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.
*Environmental Restoration* means restitution for the loss, damage, or
destruction of natural resources arising out of the accidental discharge,
dispersal, release or escape into or upon the land, atmosphere, watercourse,
or body of water, of any commodity transported by a motor carrier. This shall
include the cost of removal and the cost of necessary measures taken to
minimize or mitigate damage to human health, the natural environment, fish,
shellfish, and wildlife.
*Public Liability* means liability for bodily injury, property damage, and
environmental restoration.

The insurance policy to which this endorsement is attached provides
automobile liability insurance and is amended to assure compliance by the
insured, within the limits stated herein, as a motor carrier of property, with
Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and
regulations of the Federal Motor Carrier Safety Administration (FMCSA).
In consideration of the premium stated in the policy to which this endorsement
is attached, the insurer (the company) agrees to pay, within the limits of
liability described herein, any final judgment recovered against the insured for
public liability resulting from negligence in the operation, maintenance or use
of motor vehicles subject to the financial responsibility requirements of
Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or
not each motor vehicle is specifically described in the policy and whether or
not such negligence occurs on any route or in any territory authorized to be
served by the insured or elsewhere. Such insurance as is afforded, for public

liability, does not apply to injury to or death of the insured's employees while
engaged in the course of their employment, or property transported by the
insured, designated as cargo. It is understood and agreed that no condition,
provision, stipulation, or limitation contained in the policy, this endorsement,
or any other endorsement thereon, or violation thereof, shall relieve the
company from liability or from the payment of any final judgment, within the
limits of liability herein described, irrespective of the financial condition,
insolvency or bankruptcy of the insured. However, all terms, conditions, and
limitations in the policy to which this endorsement is attached shall remain in
full force and effect as binding between the insured and the company. The
insured agrees to reimburse the company for any payment made by the
company on account of any accident, claim, or suit involving a breach of the
terms of the policy, and for any payment that the company would not have
been obligated to make under the provisions of the policy except for the

Case 2:14-cv-00295-WY Document 19-4 Filed 07/05/11 Page 34 of 50 2014

agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

THE SCHEDULE OF LIMITS SHOWN DOES NOT PROVIDE COVERAGE. The limits shown in the schedule are for information purposes only.

Form MCS-90 (4/2000)

### SCHEDULE OF LIMITS—PUBLIC LIABILITY

| Type of carriage | Commodity transported | | Jan. 1, 1985 |
|---|---|---|---|
| (1) For-hire (In interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous).................................... | $ 750,000 | |
| (2) For-hire and Private (In interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.9, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403 | $5,000,000 | |
| (3) For-hire and Private (In interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 | |
| (4) For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 | |

### ENDORSEMENT #007

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.


THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### BROAD FORM PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

Under Coverages A and B, this insurance does not apply to any **liability, claims, suits,** or proceedings for, based upon, arising from, attributable to, related to, or in any way connected with, in whole or in part, directly or indirectly, liability arising out of any error or omission, malpractice, or mistake of a **Professional Act or Service** committed or alleged to have been committed by or on behalf of the **insured** in the conduct of any of the **insured's** business activities.  **Professional Act** or **Service** means an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill wherein the labor or skill involved is predominantly mental or intellectual rather than physical or manual.


All other terms and conditions remain the same.


_____
(Authorized Representative)

### ENDORSEMENT #008

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC0019954 02 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CONTRACTOR'S EXCLUDED HAZARDS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

Under Coverage B, this insurance does not apply to **Personal Injury, Bodily Injury or Property Damage** claims, suits, or proceedings for, based upon, arising from, attributable to, related to, or in any way connected with, in whole or in part, directly or indirectly:

I.  a)  **property damage** to any property or equipment leased by the insured; or

    b)  **property damage** to any property being installed, erected, or worked upon by the insured, his agents, or subcontractors; or

    c)  any liability arising out of any project insured under a "wrap-up" or any similar rating plan, or any joint venture; or

    d)  any liability arising out of any professional services performed by or on behalf of the **insured** including the preparation or approval of maps, plans, opinions, reports, surveys, designs, or specifications, and any supervisory, inspection, or engineering services.

II.  and except insofar as coverage is available to the **insured** in all **Scheduled Underlying Insurance** for the full limits of liability of such **Scheduled Underlying Insurance,** and then only for the hazards for which coverage is afforded under said **Scheduled Underlying Insurance.**

Property Damage arising out of:

a)  blasting or explosion other than the explosion or air of steam vessels, piping under pressure, prime movers, machinery, or power transmitting equipment; or

b)  the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, burrowing, filling or back-filling, tunneling, pile driving, coffer-dam work, or caisson work, or (2) moving, shoring, underpinning, raising, or demolition of any building or structure, or removal or rebuilding of any structural support thereof; or

c)  injury to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving.

III.  any liability assumed by the Insured under any contract or agreement unless such liability is covered by Scheduled Underlying Insurance, for the full limits of liability of such Scheduled Underlying Insurance, and then only for the hazards for which coverage is afforded under such Scheduled Underlying Insurance.

All other terms and conditions remain the same.

_____

(Authorized Representative)

CEUE154 (7/99)
MOON  02/25/2008

## ENDORSEMENT #009

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### LEAD LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

Under Coverages A and B, this insurance does not apply to any liability, claims, suits, or proceedings for, based upon, arising from, attributable to, related to, or in any way connected with, in whole or in part, directly or indirectly, arising out of continuous or intermittent or repeated exposure, inhalation or absorption of lead, lead products, or products containing lead.

All other terms and conditions remain the same.

_____

(Authorized Representative)

CEUE119 (7/99)
MOON  02/25/2008

CaseCase421261-cv-D0209566-W.Y00B01u17941029D-4 PFiged D7705/1DatePge38df16f02014

## ENDORSEMENT #010

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

## NAMED INSURED ENDORSEMENT

It is agreed that Item I. NAMED INSURED of the policy declarations page, is amended to include the following:

WESTERN BERKS LANDFILL ACQUISITION COMPANY, LLC

_____
(Authorized Representative)

GU207 (7/99)
MOON 02/25/2008

## ENDORSEMENT #011

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMENDMENT OF EXCLUSION S. – "NO FAULT", "UNINSURED MOTORIST" OR "UNDERINSURED MOTORIST" LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY (OCCURRENCE)

In consideration of the premium paid, Section IV. EXCLUSIONS, **Exclusion S.** is deleted and replaced by the following:

S.      **"No-Fault", "Uninsured Motorist" or "Underinsured Motorist" Laws**

Under Coverages A and B, this insurance does not apply to any obligation of the **Insured** under any "No-Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

All other terms and conditions remain the same.

_____
(Authorized Representative)

CEUE156 (9/01)
MOON  02/25/2008

## ENDORSEMENT #012

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

A.    The following exclusion is added:

Under Coverage A and Coverage B, this insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1.    The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2.    Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a.    Physical injury that involves a substantial risk of death; or

b.    Protracted and obvious physical disfigurement; or

c.    Protracted loss of or impairment of the function of a bodily member or organ; or

3.    The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4.    The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5.    Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B.    The following definitions are added:

CEUE159 (11/02)                                              Page 1
©, 2002, XL Environmental, Inc.
MOON 02/25/2008

)                                                    )

3.  For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or underlying insurance.

4.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a.  The act resulted in aggregate losses in excess of $5 million; and

   b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3.  "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C.  In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

All other terms and conditions remain the same.

_____
(Authorized Representative)

CEUE159 (11/02)
©, 2002, XL Environmental, Inc.
MOON  02/25/2008

Page 2

App. 186
Broker Copy

## ENDORSEMENT #013

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

Exclusion **P. War** under **IV. EXCLUSIONS** is replaced by the following:

**P.     WAR**

Under Coverages A. and B., this insurance does not apply to:

1. "Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

   a.     War, including undeclared or civil war; or
   b.     Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
   c.     Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2. "Personal and advertising injury", however caused, arising, directly or indirectly, out of:

   a.     War, including undeclared or civil war; or
   b.     Warlike action by a military force including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
   c.     Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

All other terms and conditions remain the same.

_____
(Authorized Representative)

CEUE162 (9/03)
©, 2002, XL Environmental, Inc.
MOON  02/25/2008

**ENDORSEMENT #014**

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**MOLD, ROT or OTHER FUNGI EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

Under Coverages A and B, the insurance provided under this Policy does not apply to any **Loss**, liability or damages, any cost or expense to investigate or defend a **Suit** or claim, or any other loss, cost or expense, based upon or arising from, in whole or in part, directly or indirectly:

    a.    the actual or threatened existence, presence, ingestion or inhalation of, or exposure to or contact with **mold, rot or other fungi.**

    b.    the testing for, treatment, neutralization, detoxification, removal, containment, clean up, remediation, abatement, monitoring, or any action or inaction in any way responding to or assessing the effects of **mold, rot or other fungi**, by any **Insured** or by any other person or entity.

This exclusion applies regardless of whether coverage is afforded under the **Scheduled Underlying Insurance**, or whether any other cause, event, condition or product contributed concurrently or in any sequence to any liability, **Loss**, damage, cost or expense, including but not limited to any cause, event or condition or product involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, any concentration of moisture, water or other liquid within any material or structure, or any liability, **Loss**, cost or expense or damage related thereto.

**Mold, rot or other fungi** includes but is not limited to molds, mildews, rusts, smuts and mushrooms, whether such organisms are living or dead; superficial growth produced by such organisms; and any substance, vapor, gas, spores, microorganisms, micotoxins or emissions produced by or arising as a result of such organisms.

All other terms and conditions remain the same.

                                      _____
                                        (Authorized Representative)

CEUE164 (04/04)
©, 2004, XL Environmental, Inc.
MOON  02/25/2008

Case 2:11-cv-02956-WY Document 179-4 Filed 07/05/11 Page 41 of 64/2014

ENDORSEMENT #015

This endorsement, effective 12:01 a.m., January 23, 2008 forms a part of Policy No. UEC001995402 issued to CHESMONT DISPOSAL COMPANY, LLC by Greenwich Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONDITIONAL EXCLUSION OF TERRORISM
### (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

A.   Applicability Of The Provisions Of This Endorsement

   1.   The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

      a.   The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part; or

      b.   A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

         (1)   Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

         (2)   Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

         (3)   Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

   2.   If the provisions of this endorsement become applicable, such provisions:

      a.   Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

      b.   Remain applicable unless we notify you of changes in these provisions, in response to federal law.

BrokApp. 189